Argued and submitted November 24, 1980, reversed and remanded March 9, 1981

In the Matter of the Compensation of
Charles D. Bauder, Claimant.

BAUDER,
*Petitioner,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent.*

(WCB 78-6397, CA 17940)

624 P2d 645

Robert W. Muir, Albany, argued the cause for petitioner. With him on the brief was Emmons, Kyle, Kropp & Kryger, Albany.

Paul L. Roess, Coos Bay, argued the cause for respondent. With him on the brief was Foss, Whitty & Roess, Coos Bay.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal from a Workers' Compensation Board order reversing the referee and awarding claimant 50 percent unscheduled disability for his low back. The issue is the extent to which claimant's heart attack, suffered subsequent to the time his back disability forced retirement from his job as a pipe fitter, contributed to his inability to work.

Claimant, 59 years old on the date of the hearing, sustained his first low back injury in 1964 while working for defendant. That problem cleared up and gave claimant no trouble until 1974, when he sustained a compensable injury for which he received a 10 percent permanent partial disability award. On August 13, 1976, claimant suffered the low back injury in question when he was working in a wire basket under a dock and a wave hit the basket. On December 12, 1976, before claimant's back condition stabilized, he suffered a non-compensable heart attack. Claimant has not worked nor actively sought work since August, 1976. He was referred for rehabilitation following closure of his claim in June, 1978, but was not accepted into the program because, as a combination of claimant's heart, back, and a pre-existing knee problem, he was considered unemployable.

The medical evidence of claimant's back condition prior to his August, 1976, injury shows that claimant worked with difficulty. Working four to six hours a day would cause claimant knee and back pain. He was unable to walk more than a block and a half without considerable pain in his left leg. Dr. Holbert, who treated claimant for his 1974 injury remarked that the aggravation of the arthritic condition in claimant's lumbar spine was more or less ongoing, given the type of work the job required.

Following the second back injury, Dr. Bert diagnosed an aggravation of claimant's arthritic condition and noted that he had a limited range of motion in his back "in all planes." On November 8, 1976, Dr. Holbert noted that claimant was very stiff and seemed to have a great deal of trouble getting into and out of the examining room furniture and in dressing himself. Claimant was using a transcutaneous nerve stimulator for relief from back pain

because he was allergic to many of the drugs prescribed for that purpose. Claimant also wore a lumbar support.

On December 12, 1976, claimant had an acute myocardial infarction. On December 23, 1976, the date of claimant's discharge from the hospital, Dr. Oelke reported on claimant's progress. He noted that claimant had suffered no actual heart failure and showed no evidence of arrhythmia or other active cardiopulmonary condition or disease. On April 19, 1979, in response to a letter from claimant's attorney regarding his heart status Dr. Oelke responded:

"* * * He has basically had no definite major problems from his heart since he suffered the myocardial infarction. He has a pain syndrome which he feels is from his heart, but I feel is probably not pain related to his heart or what we call 'angina pectoris.' * * *

"* * * * *

"In addition, he is very difficult to fully evaluate in terms of exercise tolerance because he cannot, or claims he cannot, perform, for instance, on the treadmill because of back discomfort. It is also very difficult to examine him in a supine position because it causes him great discomfort simply to lie down. He has not been replaced on the treadmill since 1977, but at that time, there were no abnormalities but his performance was less than ideal and he did not really have an adequate test to fully assess his exercise tolerance because the treadmill was stopped mainly because of fatigue. * * * However, he did have abnormalities on the treadmill, even at that time, which are consistent with the decreased blood flow to his heart muscle and narrowing of the arteries to the heart which, of course, he definitely has because he suffered an MI. * * *

"The fact that he had some changes which are abnormal on his treadmill in 1977 at a heart rate of 131 does mean, or may mean, that he is definitely going to have limitation in his ability to do certain types of work, such as lifting or strenuous physical activity, even if he were able to and assuming he had no back discomfort."

On June 13, 1978, Dr. Holbert issued a report that claimant's back condition was stationary and recommended claim closure. The report indicates that claimant had virtually no low back flexibility. At that time, by claimant's own testimony, which the referee found credible, he was severely limited in his mobility, was using a cane and was in

constant pain, which was exacerbated by almost any prolonged activity. He is unable to drive and engages in virtually no recreational activities.

Claimant's claim for injury to his back August 13, 1976, was closed on August 3, 1978, and a determination order granted claimant temporary total disability and an additional 20 percent permanent partial disability. The referee concluded that, just prior to the heart attack, claimant's back disability was "nearly total." He found that the heart attack had eliminated the slight chance that claimant could have been retrained for light work. (Claimant had eighteen months of teaching experience in industrial arts). He awarded claimant disability payments equal to 100 percent permanent partial disability (320 degrees). The Board modified the referee's order to grant claimant 50 percent permanent partial disability. We reverse.

It is unclear from the Board's opinion whether they concluded a) that claimant's back condition produced a 50 percent disability just prior to the heart attack and the combination of the two rendered him permanently and totally disabled or b) that, as of the medically stationary date of June 13, 1978, claimant's back problems accounted for roughly half of his total disability.[1]

■■ It is axiomatic that claimant has the burden of proving the extent of his disability. When a person sustains a compensable injury, recovery from which is complicated by a subsequent noncompensable injury, he must demonstrate the extent to which the compensable injury resulted in disability. Where the two injuries are to the same area of the body or otherwise interrelated, the second may be compensable as an aggravation of the first. If not, or if the second injury is unrelated to the first injury but nevertheless contributes to the total disability (as in this case), it creates some difficult proof problems. The question here is, therefore, whether claimant proved that he was permanently and totally disabled on the medically stationary

---

[1] The Workers' Compensation Board opinion notes its agreement with the referee that claimant was permanently and totally disabled as the result of his back and heart condition and states:

"* * * The Board does not find, as the Referee did, that just prior to his heart attack the claimant suffered a total loss of wage earning capacity. * * *"

date as the result of his compensable back injuries, regardless of the restrictions his heart attack might have placed on the type of work claimant could have done had his back condition improved. We conclude that he did.

The medical evidence of claimant's back condition, together with his testimony, indicate that his back condition grew gradually worse between August, 1976, and June, 1978. As of that latter date, claimant could neither walk, sit nor stand for prolonged periods. He was unable to bend in the normal manner, was in constant pain, and walked by use of a cane. The referee characterized claimant at the hearing as "severely crippled" and both the referee and the Board agreed that claimant was permanently and totally disabled at that time. There is no evidence in the record that claimant's condition, in terms of his ability to return to his old job or other gainful employment, was any better on the medically stationary date than on the date of the hearing.

The Board relies on Dr. Holbert's statement in a November, 1978, report that claimant, assuming his back condition was sufficiently improved, could not return to work because of his heart condition. This suggests that the heart condition, standing alone, was sufficient to produce total disability. First, since Dr. Holbert did not treat claimant for his heart problems, the opinion of Dr. Oelke is, in our view, more persuasive. His report of April 18, 1979, quoted at length above, indicates that the heart condition would produce some restrictions on the type of work claimant could do, but does not go so far as to suggest that the restriction would be total. Indeed, his other comments show that the heart condition is not part of a disease process and did not produce complications. In fact, it appears that claimant's heart condition has been more or less stable since shortly after the attack itself.

■ More importantly, the Board puts the cart before the horse in attempting to reckon the extent to which the heart attack by itself would have rendered claimant disabled. The very difficulty expressed by Dr. Oelke, which prevented him from being more precise with respect to disability stemming from the heart condition, was claimant's inability to perform a treadmill test or tolerate a

supine examination because of back problems. In sum, it appears to us that it is claimant's back problem by itself that prevents claimant from returning to some kind of gainful employment. The fact that claimant suffered a heart attack is immaterial where the evidence establishes that, prior to becoming medically stationary, claimant's back condition had degenerated to the extent that it rendered him permanently and totally disabled.

The referee was similarly in error in concluding that whatever chance of retraining claimant existed immediately before the heart attack was thereby eliminated. The pertinent date is the date claimant's back condition became medically stationary. Indications are that, but for his back condition, claimant could have returned to some kind of light work after his heart attack.

Reversed and remanded.